# UNITED STATES DISTRICT COURT
for the
Southern District of California

FILED
OCT 2 6 2017
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                    DEPUTY

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

Blue/White Senwa Cellular Phone
IMEI: 35779007216267

Case No. **17MJ4008**

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, incorporated herein.

located in the ___Southern___ District of ___California___, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 8 U.S.C. Secs.1324(a)(1)(a)(i), (a)(1)(B)(iv), and (a)(2)(B)(ii) | Bringing in illegal aliens resulting in death; Bringing in illegal aliens for financial gain. |

The application is based on these facts:
See attached Affidavit of Robert P. Meyer

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Robert P. Meyer, U.S. Border Patrol Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 10/26/17

*Judge's signature*

City and state: San Diego, California      Hon. William V. Gallo, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT

ROBERT MEYER, being duly sworn, states:

1. I am a Border Patrol Agent with the United States Border Patrol and have been so employed for over eight years. I am currently assigned to a non-uniformed intelligence team. Previously, I patrolled the U.S./Mexico border for approximately eight years. My duties as an agent include investigating alien smuggling organizations. I have received specific training in alien smuggling investigations and the methods used by smugglers to bring aliens into the United States. I have also investigated numerous alien smuggling cases, using many investigative techniques (including, as is relevant here, using cell phone records to develop evidentiary leads and uncover criminal associates).

2. This affidavit supports an application to search one Blue/White Senwa cellular phone, IMEI number 35779007216267 (the "**Subject Phone**"), described more specifically in Attachment A to the search warrant, incorporated herein. The **Subject Phone** is currently in the possession of the Department of Homeland Security, United States Border Patrol, Highway 94 Checkpoint, 15430 Campo Road Jamul, California 91935 (Evidence Vault).

3. Based on information below, I have probable cause to believe that the **Subject Phone** contains evidence of a crime; fruits of a crime; and instrumentalities used to commit a crime. Specifically, I have probable cause to believe that within the **Subject Phone** is evidence of bringing in aliens resulting in death, in violation of 8 U.S.C. § 1324(a)(1)(A)(i) and (B)(iv), and bringing in aliens without presentation for financial gain, in violation of 8 U.S.C. § 1324(a)(2)(B)(ii). As described below, the Subject Phone was in the possession of one of the material witnesses when she was apprehended with a larger group which crossed into the United States on July 31, 2017.[1]

4. The evidence to be searched for and seized is listed in Attachment B to the search warrant, incorporated herein.

5. The following is based on my own investigation and oral and written reports by other law enforcement officers. Because this affidavit is submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth each and every fact that I or others have learned during the course of this investigation.

---

[1] The United States is simultaneously seeking search warrants for the cellular phones belonging to two other material witnesses from this same group.

1

## PROBABLE CAUSE

6. On the morning of August 1, 2017, a Border Patrol agent operating an infrared scope in the Brown Field area of responsibility observed six individuals attempting to hide in brush. The individuals were hiding in an area commonly frequented by illegal aliens, about 5 miles north of the U.S./Mexico border. Border Patrol agents responded to the area and found the individuals. Upon contact, all six admitted they were citizens of Mexico without permission to be in the United States. All but one of the individuals identified Flavio Daniel Meza-Gonzalez (Meza) as the group's foot guide;[2] in a post-*Mirandized* statement, Meza admitted that as well.

7. While processing the group of aliens, Border Patrol discovered that two other aliens found several miles away that morning had also crossed the border with Meza's group. One of the two, David Ramirez-Diaz, was found deceased due to environmental heat stress (heat stroke) on Otay Mountain. The other, Itzel Mondragon-Mancilla (the decedent's wife) identified Meza as her guide and others in Meza's group as her fellow crossers. In his post-*Mirandized* interview, Meza acknowledged that a husband and wife had been in his group, and that the group left the couple behind after the husband became ill.

8. The material witnesses were interviewed. In relevant part, the witnesses indicated they crossed the border early on July 31, 2017, after spending varying amounts of time at staging house in Tijuana. They were paying between $7,000 and $8,500 to be smuggled into the United States. When they arrived at the border, a ladder crew for the smuggling organization arrived and positioned ladders on the fence so they could cross.

9. During material witness interviews conducted August 1, 2017, five material witnesses stated they or someone close to them set up arrangements for them to be smuggled into the United States. Material witnesses Mondragon-Mancilla and C.P.P. indicated that once they arrived at the Tijuana International Airport, their traveling companions (Ramirez-Diaz and C.P.P.'s uncle, respectively) made contact with the smuggling organization; thereafter, someone came to pick them up to take them to a house in Tijuana.

10. In Mondragon's interview, conducted shortly after apprehension on August 1, 2017, Mondragon said she was being smuggled into the United States for $7,000-$8,000. She said she traveled to a house in Tijuana, where she was given food and water for the upcoming journey.

11. In C.P.P.'s interview, conducted shortly after apprehension on August

---

[2] The one who did not identify Meza said he did not want to identify the guide because he was a family friend.

1, 2017, C.P.P. said he was being smuggled into the United States for $7,000-$8,000. He said he traveled to a house in Tijuana, where he was given food and water for the upcoming journey.

12. Based on testimony from the material witnesses, including Mondragon, Mondragon accessed her cellular phone after crossing the border in an attempt to get help for her struggling husband, Ramirez. For instance, based on her statements, she used the **Subject Phone** to called "9-1-1" as well as her husband's family members for assistance.

13. Based upon my experience and training, consultation with other law enforcement officers experienced in alien smuggling investigations, and all the facts and opinions set forth in this Affidavit, there is reason to believe that evidence of violations of 8 U.S.C. § 1324(a)(2)(B)(ii), committed by MEZA and co-conspirators, will be found on the **Subject Phone**. Such evidence may include telephone numbers, made and received calls, contact names, electronic mail (email) addresses, appointment dates, messages, pictures and other digital information.

14. Based on my training, work experience, and conversations with other law enforcement personnel, I am also aware that smugglers and smuggled aliens will use cellular telephones because they are mobile and they have instant access to telephone calls, text, web, and voice messages. I am also aware that the use of cellular telephones tends to generate evidence that is stored on the cellular telephones including, but not limited to emails, text messages, photographs, audio files, call logs, address book entries, IP addresses, social network data, and location data.

## PROCEDURES FOR ELECTRONICALLY STORED INFORMATION

15. It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular

telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

16. Following the issuance of this warrant, I will collect the **Subject Phone** and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

17. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this court.

/ /
/ /
/ /
/ /
/ /

4

## CONCLUSION

18.     Based on all of the facts and circumstances described above, I believe that probable cause exists to conclude that Mondragon used **Subject Phone** to facilitate the offense of crossing the border illegally and to communicate with others assisting her to cross the border. The **Subject Phone** was likely used to facilitate the offense by transmitting and storing data, which constitutes evidence, fruits, and instrumentalities of violations of Title 8, United States Code, Section 1324.

19.     I also believe that probable cause exists to believe that evidence, fruits and instrumentalities of illegal activity committed by MEZA and co-conspirators continues to exist on **Subject Phone.**

20.     Therefore, I respectfully request that the Court issue a warrant authorizing me or another federal law enforcement agent specially trained in digital evidence recovery, to search the items described in Attachment A, and seize the items listed in Attachment B, using the methodology described above.

I swear the foregoing is true and correct to the best of my knowledge and belief.

Robert Meyer
Border Patrol Agent
United States Border Patrol

Subscribed and sworn to before me this ___26___ day of October, 2017.

Honorable William V. Gallo
United States Magistrate Judge

5

## ATTACHMENT A

The property to be searched is as follows:

Blue/White Senwa Cellular Phone
IMEI: 35779007216267

This cellular phone is currently in the possession of the Department of Homeland Security, United States Border Patrol, Highway 94 Checkpoint, 15430 Campo Road Jamul, California 91935 (Evidence Vault).

6

## ATTACHMENT B

## ITEMS TO BE SEIZED

Authorization to search the Subject Phone described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the Subject Phone for evidence described below. The seizure and search of the Subject Phone shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephone will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the time period of July 24, 2017 to and including August 1, 2017:

a) tending to indicate efforts to smuggle illegal aliens into the United States from Mexico, including coordination of logistics prior to the smuggling event;
b) tending to identify other facilities, storage devices, or services–such as email addresses, IP addresses, phone numbers–that may contain electronic evidence tending to indicate efforts to transport and harbor illegal aliens;
c) tending to identify co-conspirators, criminal associates, or others involved in efforts to transport and harbor illegal aliens who have been smuggled into the United States;
d) tending to identify travel to or presence at locations involved in efforts to smuggle illegal aliens into and through the United States;
e) tending to identify the user of, or persons with control over or access to, the **Subject Phone**; and/or
f) tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

**which are evidence of violations of Title 8, United States Code, Sections** 1324(a)(2)(B)(ii).